IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **CORY EAVES**, <br> **Plaintiff,** <br><br> v. <br><br> **FCA US LLC** f/k/a **CHRYSLER GROUP LLC**, <br> **Defendant.** | **CIVIL ACTION NO.:** _____ <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff, **CORY EAVES**, (hereinafter "Plaintiff") files this petition and suit against Defendant FCA US LLC formerly known as Chrysler Group LLC (hereinafter "Defendant"). In support of this complaint, Plaintiff respectfully presents the following:

### I.  PARTIES

**1.1** Plaintiff resides and is domiciled in Cass County, Texas.

**1.2** Defendant FCA US LLC (hereinafter referred to as "FCA") is a limited liability company incorporated in Delaware and with its principal place of business in Michigan. Service of process may be effected by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas. Chrysler Group LLC designed the subject vehicle, but has since changed its legal name to FCA US

1

LLC. As such, the proper name of the entity is FCA US LLC f/k/a Chrysler Group LLC.

## II. JURISDICTION, AND VENUE

**2.1** This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as Plaintiff's claims arise under the Constitution and laws of the United States. This Court further has subject matter jurisdiction through diversity jurisdiction under 28 U.S.C. § 1332.

**2.2** Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims occurred in this judicial district and division, as further referenced from the Statement of Facts.

**2.3** Plaintiff suffered damages within the required jurisdictional limits of this Court. The amount in controversy is more than $75,000.00, not counting interest and costs of court.

## III. FACTS

**3.1** On the afternoon of August 27, 2021 on Highway 8 just north of Douglassville, Texas in Cass County, Texas, Cory Eaves was driving north-bound along Highway 8 and Dalton Washington was in the passenger seat. Cory was driving a 2012 Ram 3500 four-wheel drive, turbodiesel, crew cab, heavy duty pickup truck that he owned. The VIN number of the vehicle is 3C63DRJLXCG146184.

**3.2** Meanwhile, a semi-truck drove southbound and approached a curve. As the semi-truck driver went around the curve, he crossed the yellow center line, hit the

truck Cory and Dalton were in, and caused their vehicle to flip numerous times on the pavement.

**3.3** During the rollover, the poorly designed roof of the 2012 Ram 3500 collapsed on Cory's head while his body was held still by the seatbelt. When the police responded, Cory was non-responsive and they thought he passed away. Nonetheless, the first responders persisted, cut him out of the vehicle, and life-flighted him to Shreveport, Louisiana. Once at the hospital, the doctors resuscitated him.

**3.4** Cory suffered an open skull fracture, a severe traumatic brain injury, brain hemorrhages, brain bleed, brain swelling, fractured vertebra, disc herniations, labral tears in his shoulder, and had a GCS of 8.

**3.5** Below are pictures of the vehicle. In *Figure 1*, the viewer can see the roof crushing Cory's head before first responders cut him out. *Figure 2* shows the truck being towed from the scene. *Figure 2* shows nothing but glare and sunlight where the 'A pillar' is supposed to be. *Figure 3* shows the truck at the tow yard. Please note in the background of *Figure 3* is a white Ram pickup truck. The sheer amount of roof crush on Cory's truck becomes painfully obvious when comparing the roof of the white Ram to the roof of the black Ram (Cory's pickup truck). *Figure 4* shows the minimal amount of survival space afforded to Cory by FCA's defective roof design.



*Figure 1 – Roof Crushing Cory's Head*



*Figure 2 – Cory's Truck on Tow Bed Leaving the Scene*



*Figure 3 – Cory's Truck in Tow Yard; Note Roof of White Ram Compared to Roof of Cory's Ram*

*Figure 4 – Minimal Survivability Space*

**3.6** As a foreseeable result of Defendant's actions, Plaintiff suffered serious and permanent injuries and damages.

## IV. Causes of Action
### A. Design Defect – Strict Products Liability

**4.1**  Plaintiff incorporates paragraphs 3.1-3.6 as if fully stated verbatim herein.

**4.2**  Defendant is strictly liable to Plaintiff under Texas Civil Practice and Remedies Code Chapter 82 and other applicable law for the injuries suffered by Plaintiff because the risks inherent in the design of the vehicle's roof outweighed the utility of the chosen design, thereby rendering the vehicle defective, unreasonably dangerous, and not reasonably suited to use for which it was intended.

**4.3**  It was the duty of FCA to design, test, distribute, and sell the vehicle so that it is reasonably safe for foreseeable use. It is foreseeable that its vehicles, including the Ram 3500 in this case, will be in a rollover wreck. This is especially true for its pickup trucks as they are more likely to roll over than typical passenger sedans.

**4.4**  At the time the vehicle left the control of FCA and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

**4.5**  At all times, the vehicle was used in the manner intended, recommended, or reasonably foreseeable by FCA. The vehicle FCA manufactured and/or supplied was defective in design in that when it left their hands as the vehicle's foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

**4.6**  Specifically, the subject Dodge Ram 3500 exhibited insufficient roof strength to properly protect its occupants. The cab body structure was inadequately engineered to prevent excessive cabin intrusion during the rollover event. The cab

body design and performance failed to meet the industry standard of care for roof strength.

**4.7** The roof design of this vehicle poses a significant and serious safety risk to its occupants, which outweighs its utility. The Ram 3500 is heavier than the Ram 2500, which is heavier than the Ram 1500. As such, the roof of the Ram 3500 should be stronger than the roof of the Ram 2500, which should be stronger than the roof of the Ram 1500. Otherwise, the heavier the truck, the weaker the roof and the more likely and foreseeable it is for serious injuries to occur as a result of a roof crush.

**4.8** Nonetheless, since there is no applicable federal standard on roof strength for the vehicle Cory drove and FCA designed, FCA likely did not make the roof of this Ram 3500 stronger than a Ram 2500 or Ram 1500 and made a conscious and intentional decision to not build the roof out of stronger materials. By choosing this, FCA chose to put profits over safety. FCA's roof design in the Ram 3500 vehicle that is the subject of this case did not meet the standard of care, did not make the roof stronger to compensate for its increased weight, did not use the safest or strongest steel available, and/or was defectively designed.

**4.9** Further, the vehicle was not adequately tested by FCA to ensure that prospective owners, users, and occupants of it would not be exposed to an unreasonable risk of harm resulting from a roof crush. FCA never presented a fourth generation Ram 3500 to the National Highway Traffic Safety Administration (NHTSA) or the Insurance Institute for Highway Safety (IIHS) for roof crush testing and never published its strength to weight ratio as it did not want the public to learn

how dangerous the roof on this vehicle is. Simply put, FCA failed to adequately test the strength of this vehicle's roof before placing the vehicle in the stream of commerce.

**4.10** FCA should have known from any internal testing that was performed on the vehicle that this roof would fail to safely protect its occupants in a rollover event thereby causing an unreasonable risk of injury to prospective owners, users, occupants, and members of the public.

**4.11** FCA knew, or should have known, from its previous experiences maintaining the UV34 and UV34XL that the vehicle's roof was likely to perform in an unsafe manner during a rollover thereby causing an unreasonable risk of injury to any occupants of the vehicle.

**4.12** There was a safer alternative roof design for this vehicle that was available to FCA at the time they designed the 2012 Ram 3500. For example, FCA could have established roof crush performance criteria in line with that recommended by the IIHS for "Good" performance, which is a strength to weight ratio of at least 4 or higher. This strength to weight ratio could then have been achieved by modifying the cab structure to add additional reinforcements, increasing the material strength and or gauge of the body panels and improving the body panel joint design and load transfer capability or a combination of these structural enablers in the regions of the A and B pillars, roof rails, headers and B pillar roof bow.

**4.13** Further, the design of the 2012 Ford F-150 crew cab roof resulted in a 4.72 strength to weight rating,[1] which is more than fifty percent (50%) stronger than the

---

[1] *See* https://www.iihs.org/ratings/vehicle/Ford/f-150-crew-cab-pickup/2012


roof of a 2012 Ram 1500 crew cab. This means that a safer alternative clearly existed at the time Ram designed this vehicle. Ford also posted a $5.7 billion profit in 2012,[2] which is proof that it was economically feasible to design and implement safe roofs for pickup trucks in 2012.

4.14   This safer roof design was known to or available to FCA before the wreck and at the time it designed the 2012 Ram 3500. Their failure to implement this safer alternative is a producing cause of this wreck and Plaintiff's resulting damages.

4.15   There were other roof designs that were safer than what was in the vehicle at the time of the wreck. FCA knew, should have known, or had access to those safer alternative designs. Specifically, Ford designed its 2012 F-150 with a roof that had a 4.72 strength to weight ratio while Honda designed its 2012 Ridgeline pickup truck to have a strength to weight rating of 4.56. The 2012 Ram 1500 only had a 2.97 strength to weight rating, which means multiple manufacturers designed its pickup truck roofs' to be fifty percent (50%) stronger than FCA's pickup trucks. FCA knew of this, yet nonetheless proceeded to design, manufacture, and assemble an unreasonably dangerous roof in the vehicle despite the existence of multiple other safer alternative designs.

4.16   The dangerous and inadequate roof design and the failure to use a safer alternative design proximately caused the injuries, damages, and losses that Plaintiff has suffered. Plaintiff actually suffered physically injuries, damages, and losses. All

---

[2] *See* 2012 Form 10-K filed by Ford with the Securities and Exchange Commission, which can be found here: https://www.sec.gov/Archives/edgar/data/37996/000003799613000014/f12312012-10k.htm

defendants named herein are jointly and severally liable for the injuries and damages suffered by Plaintiff.

### B. Manufacturing Defect – Strict Products Liability

**4.17** FCA manufactured the vehicle and its faulty roof.

**4.18** Specifically, FCA manufactured the vehicle with a roof that did not adequately protect its occupants in foreseeable conditions. FCA and/or their suppliers should have manufactured this vehicle to ensure that its roof provided adequate protection to its occupants in the event of a rollover. FCA failed to do so, manufactured the vehicle with a faulty gas pedal system, and that manufacturing defect proximately caused Plaintiff's damages.

**4.19** It was the duty of FCA to manufacture, test, and sell the vehicle so that it is reasonably safe for foreseeable use.

**4.20** At the time the vehicle left the control of FCA and was placed into the stream of commerce, it contained one or more manufacturing defects, including the roof, that rendered it defective and unreasonably dangerous in light of its nature and intended use.

**4.21** The manufacturing defects of the vehicle, including the roof, proximately caused the injuries, damages, and losses that Plaintiff has suffered. Plaintiff actually suffered physically injuries, damages, and losses. All defendants named herein are jointly and severally liable for the injuries and damages suffered by Plaintiff.

### C. Marketing Defect/Failure to Warn

**4.22** FCA had a duty to exercise reasonable care in the sale, warning, labeling, maintenance, and/or distribution of the vehicle, including a duty to warn of any potential or known risks associated with the vehicle. Nonetheless, FCA failed to warn Plaintiff about the significant and foreseeable risk of harm posed by the vehicle's roof strength.

**4.23** FCA knew that the vehicle's design defects and manufacturing defects, including the roof, posed a significant risk of foreseeable harm to all occupants of the vehicle prior to this wreck. Despite knowing that the vehicle had these risks, FCA never informed anyone of the dangers posed by its unreasonably dangerous roof.

**4.24** This marketing defect and failure to warn Plaintiff of the risks associated with the vehicle's roof proximately caused the injuries, damages, and losses that Plaintiff has suffered. Plaintiff actually suffered physically injuries, damages, and losses. All defendants named herein are jointly and severally liable for the injuries and damages suffered by Plaintiff.

### D. Negligence

**4.25** FCA had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of the vehicle it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

**4.26** FCA breached their duty of care to Plaintiff through their negligent acts and omissions. FCA did not exercise reasonable care in warning, design, manufacture,

sale, testing, labeling and/or distribution into the stream of commerce of the utility vehicle in that the aforementioned defendants knew or should have known that the vehicle could cause serious injuries.

**4.27**   FCA were negligent in the design, manufacture, sale, testing, and/or distribution of the vehicle in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing the vehicle so as to avoid or not warn against the known risks to consumers who used the vehicle; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover and/or adequately warn of the dangers associated with the use of the vehicle despite having actual and/or constructive knowledge of such dangers.

**4.28**   FCA knew or should have known that Plaintiff and other users could foreseeably suffer injuries as a result of their failure to exercise ordinary care as described above.

### E. Gross Negligence

**4.29**   As set out above, all Defendant's actions constitute not only negligence, but also gross negligence and/or malice as those terms are defined in SECTION 41.001(7)(A) AND 41.001(11) OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE. Defendants' negligent conduct was more than momentary thoughtlessness or inadvertence. Defendants' acts and omissions, when viewed objectively from the standpoint of the actors at the time of its occurrence were heedless and reckless, constituting an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were aware of the risk but nevertheless

proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff. The above acts and/or omissions were singularly and cumulatively the proximate cause of the occurrence in question and the resulting injuries and damages sustained by Plaintiff.

**4.30** Defendant had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and others.

**4.31** More specifically, FCA knew that a safer roof design existed as the roofs on the pickup trucks designed by both Ford and Honda in 2012 were designed and tested to actually be more than fifty percent (50%) stronger than the 2012 Ram 1500 roof. FCA knew that both Honda and Ford's design were safer than theirs, yet it made an intentional decision to proceed with its substandard and dangerous roof design so that they could save money.

**4.32** FCA knew that its roof design in this vehicle posed an extreme degree of risk, considering the probability of magnitude of harm to others and to all occupants of the vehicles prior to the wreck. Nonetheless, FCA proceeded with conscious indifference to the safety and welfare of all occupants of the vehicle.

## V.    INTEREST

**5.1** Plaintiff further request both prejudgment and post judgment interest on all their damages as allowed by law.

## VI.    REQUEST FOR JURY TRIAL

**6.1** Plaintiff demand that this case be tried to a jury.

## VII.   PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

**7.1**   Plaintiff hereby request and demand that each defendant preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including contracts, lists of donors, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, maps, photographs, videotapes, audiotapes, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, log books, or information related to the reference claim.  Failure to maintain such items shall constitute a "spoliation" of the evidence.

## VIII.  DAMAGES

**8.1**   Defendant's actions described herein proximately caused Plaintiff to incur the follow damages:

- Physical pain sustained in the past;
- Physical pain that, in reasonable probability, Plaintiff will sustain in the future;
- Mental anguish sustained in the past;
- Mental anguish sustained that, in reasonable probability, Plaintiff will sustain in the future;
- Physical impairment sustained in the past;
- Physical impairment that, in reasonable probability, Plaintiff will sustain in the future;
- Medical care expenses sustained in the past;
- Medical care expenses that, in reasonable probability, Plaintiff will sustain in the future;
- Loss of earning capacity sustained in the past;
- Loss of earning capacity that, in reasonable probability, Plaintiff will sustain

- in the future;
- Disfigurement sustained in the past; and,
- Disfigurement that, in reasonable probability, Plaintiff will sustain in the future.
- Loss of consortium;
- Pre-judgment interest;
- Post-judgment interest;
- Exemplary damages;

## IX.  PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear and answer herein and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant, for actual damages in an amount in excess of the minimum jurisdictional limits of the court, exemplary damages, interest, attorney fees and taxable costs of court, and for such other further relief to which Plaintiff may be justly entitled by law and equity.

## CERTIFICATION AND CLOSING

Under FEDERAL RULE OF CIVIL PROCEDURE 11, by signing below, I certify to the best of my knowledge, information, and belief this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support of, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) the complaint otherwise complies with the requirements of Rule 11.

        RESPECTFULLY SUBMITTED,

        DESOUZA LAW, PC
        4047 NACO PERRIN, SUITE 100
        SAN ANTONIO, TEXAS 78217
        210/ 714-4215 – PHONE
        210/496-0060 – FACSIMILE

        BY: */S/ Jason F. DeSouza*
            JASON F. DESOUZA
            STATE BAR NO.: 24073255
            EDTX: APPLICATION PENDING
            jason@jfdlawfirm.com

        BY: */S/ Nathan Z. Robinson*
            NATHAN Z. ROBINSON
            STATE BAR NO.: 24072306
            EDTX: ADMITTED
            nathan@jfdlawfirm.com

        BY: */S/ Lucas W. Williams*
            LUCAS W. WILLIAMS
            STATE BAR NO.: 24086401
            EDTX: ADMITTED
            lucas@jfdlawfirm.com

        ***ATTORNEYS FOR PLAINTIFF***